IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FERNANDO RODRIGUEZ-FERNANDEZ,

    Plaintiff

        v.

DOMINGO HERNANDEZ-MIRO, et al.,

    Defendants

CIVIL NO. 08-2178 (JAG)

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is a Motion for Summary Judgment (Docket No. 45) filed by the Autoridad de Edificios Públicos de Puerto Rico, Domingo Hernández-Miró, Reinaldo L. Castellanos, Francisco Estades, Victor de la Cruz and Leila Hernández (collectively, "Defendants"). For the reasons set forth below, the motion is **GRANTED**.

FACTUAL AND PROCEDURAL BACKGROUND

Fernando Rodríguez-Fernández ("Plaintiff") is a career employee of co-defendant Autoridad de Edificios Públicos de Puerto Rico ("AEP"), a public corporation of the Commonwealth of Puerto Rico. Currently, Plaintiff holds the position of Internal Security Officer. On October 14, 2008, Plaintiff filed the

Civil No. 08-2178 (JAG)                                             2

present complaint against Defendants requesting money damages under several sections of the Civil Rights Act, 42 U.S.C. § 1983 *et seq.*, the First and Fourteenth Amendment of the Constitution of the United States, and the Constitution and laws of the Commonwealth of Puerto Rico. Plaintiff sued Defendants, who are all supervisors of the AEP in both their personal and official capacities.

Plaintiff claims that he suffered from retaliation after he exercised his right to free speech and disclosed several alleged illegal acts committed by Defendants. According to Plaintiff, Defendants committed plain fraud against the government of the Commonwealth of Puerto Rico, wasted public funds, and engaged in corrupt acts. Plaintiff avers that on account of his whistle-blowing, he was demoted. As to his alleged demotion, Plaintiff contends that he was in charge of supervising the Caguas and Humacao regions and that after he reported Defendants' purportedly illegal acts he was removed from the Humacao Region and left with the Caguas region. Plaintiff avers that this demotion had an adverse effect on his income. Furthermore, Plaintiff posits that Defendants retaliated against him by initiating several disciplinary investigations against him. Moreover, Plaintiff claims that he suffered retaliation for whistle-blowing when his application for a job posting that constituted a promotion was denied. (Docket No. 1).

Civil No. 08-2178 (JAG)                                                    3

On December 31, 2008, Defendants moved for the dismissal of the case. They argued that Plaintiff's claims against them in their official capacity under Section 1983 were not adequate First and Fourteenth Amendment claims. Additionally, Defendants alleged that they were entitled to qualified immunity and, therefore, the personal capacity claims against them should also be dismissed. (Docket No. 15). Plaintiff did not oppose Defendants' Motion to Dismiss.

The Court granted in part and denied in part Defendants' motion. In its Opinion and Order, the Court found that Plaintiff's allegations sufficiently established a claim for retaliation under the First Amendment and due process under the Fourteenth Amendment, but failed to establish a valid Equal Protection claim. (Docket No. 20). It further found that defendants were not entitled to qualified immunity.

On April 9, 2010 Defendants filed a Motion for Summary Judgment. (Docket No. 25). In it, they argue that all allegedly retaliatory acts that occurred more than one year before the complaint was filed are time-barred; that Plaintiff is unable to establish a case of retaliation for whistle-blowing because he did not engage in "speech" as defined by current law and, in the alternative, that no adverse employment action was taken against him; that he has not been deprived of his employment or even

Civil No. 08-2178 (JAG)                                          4

demoted, which precludes his due process claim. They further
request the dismissal of Plaintiff's claims under Section 1985
and section 1986 because of failure to establish that two or
more persons conspired to deprive him of his rights. Finally,
they request the dismissal of Plaintiff's supplemental claims.

Plaintiff filed his opposition. (Docket No. 63). He argues
that his claims are time-barred; that contrary to Defendants'
position he engaged in constitutionally protected speech when he
denounced before several authorities within and outside the AEP
what he viewed as violations of rules and regulations by
officers of said agency; that adverse employment actions were
taken against him; and that Defendants violated his due process
rights as a result of the adverse employment actions taken
against him. He further argues that Defendants failed to state
the basis for their request of the dismissal of his Section 1985
and Section 1986 claims. Defendants filed a Reply. (Docket No.
76).

### STANDARD OF REVIEW

Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled
to judgment as a matter of law based on the pleadings,

Civil No. 08-2178 (JAG)                                            5

depositions, answers to interrogatories, admissions on file, and
any affidavits." <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175
(1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is
"genuine" if it can be resolved in favor of either party.
<u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir.
2004). A fact is "material" if it has the potential to change
the outcome of the suit under governing law. <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for
summary judgment bears the burden of showing the absence of a
genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986). "In prospecting for genuine issues of
material fact, we resolve all conflicts and draw all reasonable
inferences in the nonmovant's favor." <u>Vineberg v. Bissonnette</u>,
548 F.3d 50, 56 (1st Cir. 2008).

     Although this perspective is favorable to the
nonmovant, once a properly supported motion has been presented
before a Court, the opposing party has the burden of
demonstrating that a trial-worthy issue exists that would
warrant the court's denial of the motion for summary judgment.
<u>Anderson</u>, 477 U.S. at 248. The opposing party must demonstrate
"through submissions of evidentiary quality, that a trial worthy
issue persists." <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st
Cir. 2006) (internal citations omitted). Moreover, on issues

Civil No. 08-2178 (JAG)                                                        6

"where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv.(Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. Anderson, 477 U.S. at 255.

**ANALYSIS**

**1. Timeliness of Plaintiff's claims**

Since Section 1983 lacks an accompanying federal statute of limitations, the Supreme Court has held that courts should apply the forum state's statute of limitations governing personal injury actions. See Owens v. Okure, 488 U.S. 235, 236 (1989). The Puerto Rico Civil Code establishes a one-year statute of limitations for such actions. See P.R. Laws Ann. tit 31, §

Civil No. 08-2178 (JAG)                                                7

5298(2) (2011); see also <u>Pagán Vélez v. Laboy Alvarado</u>, 145 F. Supp.2d 146, 152 (1st Cir. 2001). The one-year statute of limitations period begins to run one day after the date of accrual. <u>Benítez-Pons v. Puerto Rico</u>, 136 F.3d 54, 59 (1st Cir. 1998). Accordingly, a one-year statute of limitations applies to Plaintiff's Section 1983 claims. <u>Rodríguez-García v. Municipality of Caguas</u>, 354 F.3d 91, 96 (1st Cir. 2004); see also <u>Vélez v. Alvarado</u>, 145 F. Supp. 2d 146, 152 (D.P.R. 2001).

Although the limitations period is determined by state law, the accrual date is a question of federal law that is not resolved by reference to state law. <u>Wallace v. Kato</u>, 549 U.S. 384 (2007); <u>Rodríguez-García</u>, 354 F.3d at 96; <u>Carreras-Rosa v. Alves-Cruz</u>, 127 F.3d 172, 174 (1st Cir. 1997) (*per curiam*). Under federal law accrual begins when the claimant knew or had reason to know of the injury. <u>Rodríguez-García</u>, 354 F.3d at 96; <u>Benítez-Pons</u>, 136 F.3d at 59.

Defendants argue that since the case at bar was filed on October 8, 2008, all allegedly retaliatory events that occurred more than a year before the complaint was filed are time-barred. Plaintiff acknowledges that his Section 1983 claims are subject to a one-year statute of limitations but posits that Defendants' acts were all part of a continuing violation.

Civil No. 08-2178 (JAG)                                          8

The continuing violation doctrine, however, is not
applicable in this case because each of the purportedly
retaliatory acts described by Plaintiff are separate and clearly
distinguishable. In Amtrak v. Morgan, 536 U.S. 101, 110 (2002)
the Supreme Court stated that a "discrete retaliatory act
occurred on the day that it happened." (internal quotations
omitted). Discrete retaliatory acts may include terminations,
failure to promote, denial of transfer, or refusal to hire,
because of the fact that they are easily identifiable.
Therefore, even if there is a pattern of retaliation, the
accrual of the limitations period for each discrete act of
retaliation comprising the pattern starts to run the moment each
act occurs.

Therefore, Plaintiff's claims under Section 1983 for the
alleged retaliatory acts that took place before October 14, 2007
are time-barred. That is, his Section 1983 claims relating to
the two disciplinary investigations conducted against him for
allegedly working on another job during his work hours at the
AEP and for unauthorized absences are not actionable. There is
no controversy regarding the fact that the disciplinary actions
began on March 20, 2007 and September 4, 2007, respectively.
(Defendants' Statement of Uncontested Material Facts, ["DSUMF"],
Docket No. 45-3, ¶ 58). Plaintiff admitted this as true.

Civil No. 08-2178 (JAG)                                            9

(Response to Defendants' Uncontested Facts and Plaintiff's
Contested Facts ["PRUF"], Docket No. 63-1, ¶ 43). Hence, it is
uncontested that both disciplinary actions took place more than
a year before the complaint was filed.

### 2. Whistle-blowing

To prevail on a "whistle-blowing" claim, a plaintiff must
ultimately establish that (1) the speech at issue involves
matters of public concern, Connick v. Myers, 461 U.S. 138, 146
(1983); (2) the plaintiff's and the public's First Amendment
interests outweigh the government's interest in promoting
efficiency in the services that it provides, Mullin v. Town of
Fairhaven, 284 F.3d 31, 37 (1st Cir. 2002); and that (3) the
"protected expression was a substantial or motivating factor" in
the adverse employment decision, Id. at 38 (citing Mt. Healthy
v. Doyle, 429 U.S. 274, 287, (1977)); see also Guilloty Perez v.
Pierluisi, 339 F.3d 43, 51 (1st Cir. 2003)).

First, the speech involved here could reasonably be
regarded as a matter of public concern. "Whether an employee's
speech addresses a matter of public concern must be determined
by the content, form and context of a given statement, as
revealed by the whole record." Connick v. Myers, 461 U.S. at
147. "That determination may require an inquiry into the
employee's motive for the speech." Mullin, 284 F.3d at 38.

Civil No. 08-2178 (JAG)                                              10

Plaintiff's "revelations directly implicated a topic of inherent concern to the community-official misconduct by ... incumbent official[s]." O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1193).  His speech did not have to do with "internal personnel procedures, affecting only himself and other ... employees." Id. Instead, his constant complaints had to do with issues regarding the possible waste of public funds.

As to the second prong of the test, which inquires whether Plaintiff's and the public's First Amendment interests outweigh the government's interest in promoting efficiency in the services that it provides, the Court considers that the balance could reasonably tilt in favor of Plaintiff's and the public's interest. The public interest in the practices regarding the security of public buildings and schools, as well as the use of public property for private benefit, supplements Plaintiff's personal interest in speaking out if said interest is indeed "relatively slight" and "heavily weighting the Pickering scale in favor of First Amendment protection against retaliation for [Plaintiff's] speech." O'Connor, 994 F.2d at 916.

The next and final step of the analysis requires that it be determined whether the "protected expression was a substantial or motivating factor" in the adverse employment decision. Mullin, 284 F.3d at 38. Plaintiff alleges he suffered two

Civil No. 08-2178 (JAG)                                    11

distinct and actionable adverse employment actions: (1) a demotion; and (2) the denial of participation in a job posting.

Plaintiff argues that after he made a formal complaint regarding the Humacao Regional Director's, Victor de la Cruz's ("De la Cruz") use of AEP vehicles for personal matters he was demoted. Specifically, he alleges that he suffered a demotion because he was reassigned to work only in the Caguas region and that, because of this, he lost income in the form of mileage and *per diem* allowance.

In their Motion for Summary Judgment Defendants rebut that Plaintiff was assigned to work solely on the Humacao region by the AEP Executive Director at the time, Leila Hernández-Umpierre ("Hernández-Umpierre), in order to prevent further conflict between him and the regional director, De la Cruz. (DSUMF, ¶ 50). During her deposition Hernández-Umpierre testified that De La Cruz told her not to assign an internal security officer to his area because they did not contribute anything and that she was aware that they had some conflict and decided not to assign him to that area. (Docket No. 52-14, pp. 56-57). Defendants argue that this arrangement was temporary and that after six months he was again reassigned to work both, Humacao and Caguas. Furthermore, they posit that it cannot be considered a demotion

Civil No. 08-2178 (JAG)                                           12

because his salary and work hours remained the same. (DSUMF, Docket No. 45-2, p. 14).

Plaintiff, on the other hand, avers that Hernández-Umpierre testified in her deposition that the reassignment was made pursuant to a reorganization. (Docket No. 63, p. 11). He claims that there is no evidence to support that a reorganization took place because no one else was reassigned. He also points out to the fact that De la Cruz testified in his deposition that he did not have a problem with Plaintiff and that he did not request his removal from the Humacao region. Moreover, Plaintiff claims that he was removed from Humacao and assigned to Bayamón but later reassigned only to Caguas. Given this, he argues that there are issues of fact that preclude summary judgment and that a reasonable jury could find that Defendants' reasons are pretextual. Defendants Reply reiterates that Hernández-Umpierre reassigned Plaintiff to the Caguas region for a period of six months to avoid further conflicts with De la Cruz, not because of a reorganization.

The threshold issue regarding this matter is whether the reassignment constituted a demotion. The first Circuit has stated that "[t]he clear trend of authority is to hold that a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the

Civil No. 08-2178 (JAG)                                        13

level of a materially adverse employment action." <u>Marrero v.</u>
<u>Goya of P.R., Inc.</u>, 304 F.3d 7, 31 (1st Cir. 2001) (citing
<u>Ledergerber v. Strangler</u>, 122 F.3d 1142, 1144 (8th Cir. 1997).
It also cited <u>Kocsis v. Multi-Care Management, Inc.</u>, 97 F.3d
876, 885 (6th Cir. 1996) as stating, "Reassignments without
salary or work hour changes do not ordinarily constitute adverse
employment decision in employment discrimination claims."
However, even if no changes in salary and wages are made, other
actions from an employer may constitute constructive demotions.
Indicia of constructive demotions include whether duties usually
assigned to lower level employees are assigned, substantial
reduction of work responsibilities, termination of privileges of
rank and whether the changes and restrictions are temporary.
<u>Diaz-Gandia v. Dapena-Thompson</u>, 90 F.3d 609, 615 (1st Cir. 1996)
(citations omitted). However, "[a] transfer involving only minor
changes in working conditions and no reduction in pay or
benefits will not constitute an adverse employment action,
"otherwise every trivial personnel action that an irritable . .
. employee did not like would form the basis of a discrimination
suit." <u>Ledergerber</u>, 122 F.3d at 1144 (citing <u>Williams v.</u>
<u>Bristol-Myers Squibb Co.</u>, 85 F.3d 270, 274 (7th Cir. 1996)).

     In the case at bar, Plaintiff has not argued that his
salary or work hours were affected. In fact, he only argues that

Civil No. 08-2178 (JAG)                                          14

his income was diminished because he was unable to earn mileage and *per diem*. He states that when he supervised both regions he received $500 a month for mileage and *per diem* and that after the reassignment that amount was cut in half. (PASUF, Docket No. 63-1, ¶¶ 6-7). The Court considers that the fact that he earned less mileage and *per diem*, because he simply was not traveling as much, does not represent a decrease in salary. Mileage and *per diem* constitute reimbursements of expenses actually incurred by an employee. Since Plaintiff was traveling less because he did not have to work in the Humacao region he would have to be reimbursed for fewer expenses. However, this does not mean that he earned less, it simply means he spent less. Neither does the Court consider that his reassignment constituted a constructive demotion. Even though he supervised one area, instead of two, he retained his responsibilities within that area as well as his rank and privileges. It is also significant that the reassignment was only temporary.

Plaintiff further claims that he suffered an adverse employment action due to the exercise of his right under the First Amendment when he was not considered for the position of property coordinator. Defendants argue that he did not qualify because the job position required at least five years of experience in the administration of inventory and two years of

Civil No. 08-2178 (JAG)                                                          15

experience in the supervision of personnel. They posit that
Plaintiff only presented a certification from the Police
Department, his former employer, but that it does not indicate
whether he had supervisory experience.

Plaintiff's only argument regarding this issue in his
Opposition to the Motion for Summary Judgment is that "[t]he
evidence shows that it was crystal clear that Plaintiff exceeded
the minimum requirements for the Position of Deputy Director and
Property Coordinator since he had over the minimum five year
supervisory experience." (Docket No. 63, p. 12). Plaintiff fails
to indicate what evidence he is referring to. However, in his
Statement of Contested Issues of Fact he points out that in his
deposition he stated that he was fully qualified for the
position and submitted a letter explaining his position. (PSCF,
¶ 24; Exhibit I, Docket No. 71-5, pp. 125-126, 129-130). He also
stated that even though he was notified that he was not
qualified for the position through a letter from the Human
Resources Department, he is convinced co-defendant Domingo
Hernández-Miró, AEP's Director of the Internal Security Office,
was behind the decision. Id. Plaintiff alleges Hernández-Miró
retaliated against him because he denounced him for allegedly
aiding a security company contracted by the AEP to commit fraud,

Civil No. 08-2178 (JAG)                                              16

among other things. PSCF, ¶¶ 14-15). Plaintiff appealed the decision. (Docket No. 52-25).

The Job posting in question required, "[f]ive years of professional experience in the management of personal and real property inventory, two of which must include personnel supervision". (Docket No. 52-54). With his application, Plaintiff submitted a request for appointment to the position of Assistant payer of the Puerto Rico Police Department as evidence of his prior experience. (Docket No. 52-22, p. 3). Said document is dated May 22, 1996 and indicates that the appointment was going to be indefinite. It also indicates that he handled $15,000 in petty cash and an indefinite amount for the reward and compensation of those who aid in the capture of criminals and criminal investigations.

After carefully reviewing the aforementioned document and the record, the Court cannot find evidence, aside from Plaintiff's deposition testimony, to establish that he was in fact qualified for the position. The appointment document from the Puerto Rico Police Department does not list personnel supervisory duties. Neither does it indicate how many years he occupied said position because it was issued before he started in it.

Civil No. 08-2178 (JAG)                                             17

    Contrary   to   what   Plaintiff   avers,   his   current   job
description  does  not  include  supervision  of  personnel.  (Docket
No.  52-4).  The  only  supervisory  function  listed  is  in  relation
to  the  private  security  companies  hired  by  the  AEP  because  he
has  to  certify  that  the  surveillance  services  they  agreed  to
perform  are,  in  fact,  being  performed.  It  does  not  indicate  he
is  to  directly  supervise  personnel.  Furthermore,  Plaintiff
indicated  in  the  deposition  that,  even  though  the  Human
Resources  Department  notified  him  he  was  not  qualified,  he  is
sure  Hernández-Miró  was  behind  the  decision.  This  bare  assertion
is  not  enough  to  disprove  the  fact  that  the  documents  examined
establish  that  Plaintiff  was  not  qualified  for  the  job  posting.
The  fact  that  his  appeal  was  also  denied,  in  the  absence  of
evidence  to  the  contrary,  supports  the  conclusion  that  no
adverse  employment  action  took  place.

    3. **Due  Process  Claim  Claims  arising  under  Section  1985  and
       Section  1986**

    Plaintiff  claims  he  was  deprived  of  his  property  in
violation  of  the  Fourteenth  Amendment  of  the  United  States
Constitution  because  his  authority,  scope  of  work  and  income
were  taken  from  him  when  he  was  assigned  to  the  Caguas  region
exclusively.  However,  the  Court  will  not  entertain  this  claim
since  it  was  already  established  that  Plaintiff  did  not  suffer  a

Civil No. 08-2178 (JAG)                                          18

demotion. For the same reason, the Court will not entertain Plaintiff's Section 1985 and Section 1986 claims.

Given that the dismissal of all claims under federal law is proper, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** AEP's Motion for Summary Judgment (Docket No. 45). The case shall be dismissed with prejudice. Judgment will be entered accordingly.

In San Juan, Puerto Rico, this 7th day of March, 2011.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge